Roy A. Katriel (265463)
**THE KATRIEL LAW FIRM**
4225 Executive Square, Suite 600
La Jolla, CA 92037
Tel:    (858) 242-5642
Fax:    (858) 430-3719
Email: rak@katriellaw.com

Ralph B. Kalfayan, (SBN 133464)
**KRAUSE, KALFAYAN, BENINK & SLAVENS, LLP**
550 West C Street, Suite 530
San Diego, California 92101
Telephone:  619-232-0331
Facsimile:  619-232-4019
Email: ralph@kkbs-law.com

*ATTORNEYS FOR PLAINTIFFS*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL R. RIVA AND DANIELLE ARDAGNA, On Behalf Of Themselves And All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>PEPSICO, INC.,<br>              Defendant. | CASE NO.: **'14CV0340 BTM DHB**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

**NATURE OF THE ACTION**

1. Plaintiffs Paul R. Riva and Danielle Ardagna (collectively "Plaintiffs") by and through their attorneys, bring this class action against Pepsico, Inc. ("Defendant" or "Pepsi"), on behalf of themselves and on behalf of all others who, during the Class Period alleged herein, purchased Pepsi One or Diet Pepsi drinks within the State of California.  On multiple occasions during the Class Period, Plaintiff Riva purchased Pepsi One and Plaintiff Ardagna purchased Diet Pepsi drinks within California.  Under Section 25249.6 of California's Safe Drinking Water and Toxic Enforcement Act of 1986 (commonly referred to as "Proposition 65"), "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual."  Unbeknownst to Plaintiffs anddespite this statutory prohibition, during the Class Period, Defendants' Pepsi One and Diet Pepsi contained 4-methylimidazole ("4-MeI"), a carcinogen found on the list of Proposition 65's known carcinogens, in sufficient quantities so as to require disclosure by Defendant.  Pepsi, however, intentionally and knowingly failed to label its drinks to alert Plaintiffs and California consumers or otherwise disclose the presence of this known carcinogen.

2. Therefore, Plaintiffs now bring this action to seek relief on behalf of themselves and all those similarly situated who have purchased the Pepsi One and Diet Pepsi drinks within California during the Class Period.  Plaintiffs allege claims for violations of the California Unfair Competition Law ("UCL"), California's Consumer Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"), which, *inter alia*, seek declaratory, injunctive, and other equitable relief, as well as restitution.  Plaintiffs also bring a claim alleging Pepsi's negligence in exposing Plaintiffs and the class members to known carcinogens without adequate warning, and pray for a Court-ordered medical monitoring order as redress for this violation.

**PARTIES**

3. Plaintiff Paul R. Riva is a resident of San Diego, California.  During the Class Period, Mr. Riva purchased and consumed bottled or canned Pepsi One in San Diego County on multiple occasions.  None of the cans or bottles of Pepsi One purchased by Mr. Riva contained any

labeling or other disclosure that the drinks contained 4-MeI or a carcinogen known to the State of California. Had Mr. Riva been made aware of this fact, he would have either not purchased the drink, or would not have paid as much as he did for the Pepsi One drinks, as he would have factored in the attendant health risks that accompanied those purchases.

4. Plaintiff Danielle Ardagna is a resident of San Diego County in California. During the Class Period, Ms. Ardagna purchased and consumed bottled or canned Diet Pepsi in San Diego County on multiple occasions. None of the cans or bottles of Diet Pepsi purchased by Ms. Ardagna contained any labeling or other disclosure that the drinks contained 4-MeI or a carcinogen known to the State of California. Had Ms. Ardagna been made aware of this fact, she would have either not purchased the drink, or would not have paid as much as she did for the Diet Pepsi drinks, as she would have factored in the attendant health risks that accompanied those purchases.

5. Defendant Pepsico Inc. is a corporation organized under the laws of the State of North Carolina and having its principal place of business at 700 Anderson Hill Road in Purchase, New York 10577. Pepsico Inc. manufacturers Diet Pepsi and Pepsi One for distribution throughout the United States.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, at least one member of the class of plaintiffs is a citizen of a State different from Defendant.

7. The Court has personal jurisdiction over Defendant pursuant to Cal. Code Civ. P. § 410.10, as a result of Defendant's substantial, continuous and systematic contacts with the State, and because Defendant has purposely availed itself of the benefits and privileges of conducting business activities within the State.

8. Venue is proper in this Southern District of California pursuant to 28 U.S.C. § 1391(b) and (c), because Defendant resides (i.e., is subject to personal jurisdiction) in this district, and a substantial part of the events or omissions giving rise to the claims, including the offering for

sale and purchase of the Pepsi One and Diet Pepsi drinks by Plaintiffs and the putative class members, occurred in this judicial district.

### THE UNDISCLOSED CARCINOGEN FOUND IN DEFENDANT'S DRINKS

9. MeI is an impurity generated during the manufacture of caramel colors III and IV used in some soft drinks.

10. MeI has been found by the National Toxicology Program to cause lung tumors in laboratory animals.

11. According to Urvashi Rangan, a toxicologist and Executive Director of the Consumer Reports Food Safety & Sustainability Center, "There is no 'safe' level of 4-MeI, but if you have to set a threshold, it should be well below the Prop 65 level (29 micrograms/day) and more like 3 micrograms/day." Rangan calls exposure to 4-MeI "an unnecessary risk."

12. According to testing performed by Consumer reports, in December 2013, Pepsi sold in California contained an average 29.1 micrograms of 4-MeI per can.

13. According to testing performed by Consumer reports, from April to September 2013, Diet Pepsi sold in California contained an average 30.5 micrograms of 4-MeI per can.

14. According to testing performed by Consumer reports, from April to September 2013, Pepsi One sold in California contained an average 43.5 micrograms of 4-MeI per can, and during December 2013, Pepsi One sold in California contained an average of 39.5 micrograms of 4-MeI per can.

### PEPSICO'S UNLAWFUL NONDISCLOSURE OF THE CARCINOGEN

15. Pepsi has had and continues to have exclusive knowledge of material facts concerning the amount of 4-MeI in Pepsi One and Diet Pepsi drinks sold in California. As the outfit that manufactured the drink, Pepsi was aware both of the presence and quantity of 4-MeI in the subject drinks, yet intentionally chose not to disclose these facts to unsuspecting consumers like Plaintiffs and the putative class members.

16. In advertising and selling Diet Pepsi and Pepsi One, Pepsi has and continues to deceptively omit that these soft drinks contain dangers levels of 4-MeI that unreasonably expose consumers to cancer.

17. Pepsi's omission poses an unreasonable safety risk as unsuspecting consumers had no reason to know that they were ingesting 4-MeI, a known carcinogen, when the presence of the substance in the drinks was not disclosed to consumers as required by California law.

18. 4-MeI. Because Plaintiffs and the putative class members were not made aware of the significant presence of this known carcinogen, they had no reason to take reasonable precautions, such as drinking alternative drinks (even other carbonated soda beverages contain significantly less 4-MeI levels than Pepsi One or Diet Pepsi), curtailing the amount of Pepsi One or Diet Pepsi that they ingested so as to limit their exposure to the known carcinogen, or seeking medical advice as to the consequences of this exposure.

## **PLAINTIFFS' PURCHASES AND THE INJURIES PROXIMATELY CAUSED BY DEFENDANT'S ACTIONS AND OMISSIONS**

19. Plaintiff Riva is a repeat soft drink purchaser. During the Class Period, Riva purchased and consumed Pepsi One drinks in canned and/or bottled form in San Diego County in the State of California on multiple occasions. At no time, did any of the Pepsi One drink containers that Riva purchased in California and from which he consumed his drinks contain a label or other disclosure to the effect that the drink contained 4-MeI or a carcinogen known to the State of California. Had Riva been made aware of this significant fact, he would have either not purchased or not consumed Pepsi One, not have done so in the quantities he did, or paid a reduced price for the product to account for this inordinate health risk associated with the product.

20. Plaintiff Ardagna is a repeat soft drink purchaser, and a regular buyer and drinker of Diet Pepsi. During the Class Period, Ardagna purchased and consumed Diet Pepsi drinks in canned and/or bottled form in San Diego County in the State of California on multiple occasions. At no time, did any of the Diet Pepsi drink containers that Ardagna purchased in California and from which she consumed her drinks contain a label or other disclosure to the effect that the drink contained 4-MeI or a carcinogen known to the State of California. Had Ardagna been made aware of this significant fact, she would have either not purchased or not consumed Diet Pepsi,

not have done so in the quantities she did, or paid a reduced price for the product to account for this inordinate health risk associated with the product.

## CLASS ACTION ALLEGATIONS

21. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to represent a class of all persons who purchased in California during the four years preceding the filing of this Complaint ("the Class Period"), Diet Pepsi, or Pepsi One primarily for personal, family, or household use, and not for resale.

22. The members in the proposed class and subclass are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all class members in a single action will provide substantial benefits to the parties and Court.

23. Questions of law and fact common to Plaintiffs and the class exist and predominate over any such questions affecting only individual class members. Among these common, predominating questions are:

   a. Whether the Pepsi beverages contain 4-MeI and the amount;
   b. Whether 4-MeI is a carcinogen know to the State of California, such Proposition 65 required that its presence in the Pepsi One and Diet Pepsi beverages be disclosed
   c. Whether exposure to 4-MeI through consumption of Pepsi One and/or Diet Pepsi poses and unreasonable safety risk that triggers Pepsi's duty to disclose the presence of 4-MeI in these drinks;
   d. Whether information concerning the amount of 4-MeI in the Pepsi One and Diet Pepsi beverages is material to a reasonable consumer;
   e. The proper equitable and injunctive relief;
   f. The proper amount of restitution;
   g. The proper scope of any medical monitoring relief.

24. Plaintiffs' claims are typical of class members' claims in that they are based on the same underlying facts, events, and circumstances relating to Pepsi's conduct; namely, the lack of

1  disclosure as to the presence and extent of 4-MeI in Pepsi One and Diet Pepsi drinks sold within
2  the State of California.

3  25. Plaintiffs will fairly and adequately represent and protect the interests of the classes, have
4  no interests incompatible with the interests of the classes, and have retained counsel competent
5  and experienced in class litigation.

6  26. The class is sufficiently large for purposes of class litigation because it contains at least
7  hundreds of thousands of members who purchased Pepsi One or Diet Pepsi beverages in
8  California during the past 4 years.

9  27. Class treatment is superior to other options for resolution of the controversy because the
10 relief sought for each class member is relatively small such that, absent representative litigation,
11 it would be unfeasible for class members to redress the wrongs done to them.  Moreover, absent
12 class-wide adjudication, there would be a risk of multiple lawsuits against Defendant that could
13 impose inconsistent and incompatible standards of conduct on Pepsi regarding, *inter alia*, its
14 labeling, disclosure, and medical monitoring obligations.

15 28. Pepsi has acted or refused to act on grounds generally applicable to the class, thereby
16 making final injunctive relief and corresponding declaratory relief appropriate.  Specifically,
17 Pepsi's non-disclosure with respect to the presence of 4-MeI or of a carcinogen known to the
18 State of California has been uniform with respect to all Pepsi One and Diet Pepsi drink
19 containers sold within the State of California during the Class Period.  If Plaintiffs prevail on the
20 merits of their claim, then final injunctive relief mandating that Pepsi provide this disclosure to
21 all class members and to the consuming public at large would be proper.

## COUNT I

**(VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CALIF. CIV. CODE §1750 ET. SEQ.)**

25 29. Plaintiffs incorporate by reference the allegations of this Class Action Complaint with the
26 same force and effect as if those allegations had been fully restated here.

27 30. The CLRA prohibits deceptive practices in connection with the conduct of a business that
28 provides goods, property, or services primarily for personal, family, or household purposes.

1  31. At all relevant times during the Class Period, Plaintiffs and the putative class members were "consumers" within the meaning of the CLRA.

32. Pepsi's policies, acts, and practices of manufacturing, distributing, marketing, promoting, selling, and advertising Diet Pepsi and Pepsi One beverages within the State of California without disclosure that the drinks contained 4-MeI, a carcinogen known to the State of California, in the quantities contained in these drinks, were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA. Specifically, Pepsi's conduct has violated at least the following statutory subsections of the CLRA:

   a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have

   b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

   c. § 1770(a)(9): advertising goods with intent not to sell them as advertised.

33. Pepsi had a legal duty to disclose the presence of 4-MeI4-MeI or a carcinogen known to the State of California, within the Pepsi One and Diet Pepsi drinks sold in California  This legal duty arose under statute because it was required under Section 25249.6 of California's Safe Drinking Water and Toxic Enforcement Act of 1986 (commonly referred to as "Proposition 65"). Pepsi's legal duty to disclose also arose under California case law interpreting the CLRA because the inclusion of the alleged quantities of 4-MeI in Pepsi One and Diet Pepsi drinks, without informing consumers of the presence, posed a real and significant safety risk to Plaintiffs and the putative class members.4-MeI.

34. As a result, Plaintiffs and the putative class members have suffered irreparable harm and are entitled to injunctive and equitable relief, as well as reasonable attorneys' fees and costs of suit.  At this time, Plaintiffs do not currently seek monetary damages as part of their CLRA claim.  Following the filing of this Class Action Complaint, Plaintiffs will mail Defendant a CLRA demand letter in the manner required by statute. If the Defendant does not agree and

1  perform the relief requested in the demand letter within 30-days of its receipt, Plaintiffs reserve
2  the right to amend this Class Action Complaint to also then assert a claim for relief for money
3  damages under the CLRA.

4  35. In compliance with Cal. Civ. Code § 1782(d), Plaintiffs' affidavits of venue are filed
5  concurrently herewith, and area attached hereto as Exhibits 1 and 2, respectively.

## COUNT II

### (VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. AND PROF. CODE, §§ 17500 ET. SEQ.)

36. Plaintiffs incorporate by reference the allegations of this Class Action Complaint with the same force and effect as if those allegations had been fully restated here.

37. The FAL prohibits any statement in connection with the sale of goods "which is untrue or misleading," including deceptive omissions of material fact (Cal. Bus. & Prof. Code § 17500).

38. Pepsi promoted, marketed and advertised its Pepsi One and Diet Pepsi drinks during the Class Period by, *inter alia*, affixing a marketing label to the bottles of each of these two beverages or by imprinting marketing material on the can containers of these two beverages that touted the drink name and its supposed superior attributes. Plaintiffs and the putative class members were exposed to these labels or imprints every time they purchased their drinks, as the labels or container printing was either affixed to the bottle or imprinted on the can of the product being purchased. A sample of the label on the bottle and the imprinting on the can of Pepsi One is attached hereto as Exhibit 3.

39. None of the bottle labels or can imprints for either of these two drinks disclosed that they contained 4-MeI or a carcinogen known to the State of California.

40. Pepsi's deceptive omission of the amount and health harms of the 4-MeI in the Pepsi One and Diet Pepsi beverages was likely to deceive reasonable consumers and the public, particularly when California law required that such disclosure be made.

41. Pepsi knew, or reasonably should have known, that it was deceptively omitting material information.

42. Plaintiffs and the putative class members are entitled to injunctive and equitable relief (including, but not limited to, corrective advertising or other forms of disclosure) and restitution.

## COUNT III

**(VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CALIF. BUS. AND PROF. CODE, § 17200 ET. SEQ.).**

43. Plaintiffs incorporate by reference the allegations of this Class Action Complaint with the same force and effect as if those allegations had been fully restated here.

44. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." (Cal. Bus. & Prof. Code § 17200).

45. Pepsi's business practice of distributing, marketing, and selling Pepsi One and Diet Pepsi drinks within the State of California without disclosing the presence therein or extent of 4-MeI contained in the drinks is unlawful because it, *inter alia*, violates the CLRA and the FAL, as is alleged in this Class Action Complaint.

46. Plaintiffs sustained legal injury in making their purchases of Pepsi One and Diet Pepsi within the State of California at a time when Defendant was violating the UCL because they made a purchase they would not have made at all, or not on the terms that they did, as a result of being unaware of the undisclosed carcinogen present in these drinks.

47. In making their purchases of Pepsi One and/or Diet Pepsi, Plaintiffs conveyed money and other intangible benefits onto Pepsi and, hence, are entitled to, *inter alia*, restitution or part or all of their moneys paid for these beverages. Plaintiffs are also entitled to and do seek declaratory and injunctive relief including, but not limited to, a corrective advertising or other disclosure campaign to warn class members and the public about the carcinogen present in the Diet Pepsi and/or Pepsi One drinks.

## COUNT IV

**(NEGLIGENCE—MEDICAL MONITORING COSTS SOUGHT AS RELIEF)**

48. Plaintiffs incorporate by reference the allegations of this Class Action Complaint with the same force and effect as if those allegations had been fully restated here.

49. Pepsi owed Plaintiffs, the putative class members, and the consuming public, a duty of reasonable care when manufacturing, promoting, offering for sale, and selling its Pepsi One and Diet Pepsi products. Such a duty of reasonable care required Pepsi either to manufacture these beverages without any carcinogens known to the State of California or, barring that, to conspicuously disclose the presence and extent of such a carcinogen in these drinks.

50. Pepsi breached its legal duty by failing to disclose that the Pepsi One and Diet Pepsi beverages sold within the State of California contained 4-MeI or a carcinogen known to the State of California in the amounts present in these drinks.

51. 4-MeI is a toxic chemical and a carcinogen. Its cancer-causing proclivity is such that, since January 2011, it has been labeled by the State of California as known carcinogen whose presence above preset threshold levels (that are exceeded in Pepsi One and Diet Pepsi beverages) must be disclosed according to California's Safe Drinking Water and Toxic Enforcement Act of 1986.

52. The State of California has concluded that levels of 4-MeI exposure above 16 micrograms per day pose a significant cancer-related health risk. As testing done from April to September 2013 and in December 2013 showed, a typical 12-ounce of Pepsi One or Diet Pepsi canned beverage was found to contain at least twice the level of 4-MeI per can than the 16-microgram daily threshold level set by California. *See* Paragraphs 11 and 12 *supra*.

53. The National Toxicology Program ("NTP"), a division of the National Institute of Environmental Health Sciences, conducted a 106-week, long-term study of the effects of 4-MeI on laboratory animals. It observed that:

> [I]n males, the high-dose group had a significant increase in the combined incidences of alveolar/bronchiolar adenoma or carcinoma ($p < 0.01$). In females, the combined incidences of alveolar/bronchiolar adenoma or carcinoma were significantly increased in the mid- ($p < 0.001$) and high-dose ($p < 0.01$) groups. In addition, the incidence of alveolar epithelial hyperplasia was significantly increased in high-dose females.

54. The NTP concluded, *inter alia*, that:

> There was clear evidence of carcinogenic activity of 4-methylimidazole in male and female B6C3F1 mice based on increased incidences of alveolar/bronchiolar neoplasms.

NTP Toxicology and Carcinogenesis Studies of 4-Methylimidazole (CAS No. 822-36-6) in F344/N Rats and B6C3F1 Mice (Feed Studies). Natl. Toxicology Program Tech. Rep. Ser. 2007 Jan;(535):1-274 available at http://ntp.niehs.nih.gov/index.cfm?objectid=9B956B07-F1F6-975E-79BBCDCCD57001C8 (last visited Feb. 4, 2014).

55. The specific types of cancer documented by the NTP long-term study of 4-MeI exposure are particularly serious, yet are types for which early evaluation, detection, and diagnosis are of considerable clinical significance.

56. Plaintiffs and putative class members have been injured by Pepsi's breach of its legal duty and its selling of Pepsi One and Diet Pepsi drinks containing 4-MeI in the quantities present in these drinks. To safeguard their health and mitigate any damages for future medical treatment, medical monitoring for Plaintiffs and the putative class members is reasonable. Such monitoring, however, is expensive and, because its need arises as a result of Defendant's legal wrongdoing, its cost should be borne by Pepsi as part of a Court-ordered and awarded medical monitoring program.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class, request award and relief as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives and Plaintiffs' counsel be appointed Class Counsel.

B. Restitution in such amount that Plaintiff and all Class members paid for their Pepsi One or Diet Pepsi purchases in California.

C. A Declaration and Order enjoining Pepsi from continuing to sell its Pepsi One and Diet Pepsi beverages in California without adequate disclosure of the 4-MeI contained therein and its status as a carcinogen known to the State of California;

     D.     An Order requiring Pepsi to employ corrective disclosure and/or advertising about the sales of Diet Pepsi and Pepsi One it has made in California;

     E.     An Order requiring Pepsi to set up, fund, and implement a medical monitoring campaign to monitor the health effects of those consumers who purchased Pepsi One or Diet Pepsi in California during the Class Period;

     F.     An order awarding Plaintiffs their costs of suit, reasonable attorneys' fees, and pre and post-judgment interest.

     G.     Such other and further relief as may be deemed necessary or appropriate.

## JURY DEMAND

Plaintiffs hereby demand a jury trial for all issues so triable.

Dated: February 13, 2014

/s/ Roy A. Katriel___ (SBN 265463)
Roy A. Katriel, Esq. (SBN 265463)
**THE KATRIEL LAW FIRM**
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone: (858) 242-5642
Facsimile: (858) 430-3719
e-mail: rak@katriellaw.com

Ralph B. Kalfayan, (SBN 133464)
**KRAUSE, KALFAYAN, BENINK & SLAVENS, LLP**
550 West C Street, Suite 530
San Diego, California 92101
Telephone:  619-232-0331
Facsimile:  619-232-4019
e-mail: ralph@kkbs-law.com

*Counsel for Plaintiffs and the Putative Class*